IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HENRY JACOB PARKER,                                              CV. 06-732-MA

        Petitioner,                                             OPINION AND ORDER

  v.

BRIAN BELLEQUE,

        Respondent.

TONIA L. MORO
Assistant Federal Public Defender
15 Newtown Street
Medford, OR 97501

    Attorney for Petitioner

JOHN KROGER
Attorney General
LESTER R. HUNTSINGER
Senior Assistant Attorney General
Department of Justice
1162 Court Street
Salem, OR 97301-4096

    Attorneys for Respondent

MARSH, Judge

    Petitioner Henry Jacob Parker, an inmate in the supervisory custody of the Oregon Department of Corrections, brings this habeas

1 - OPINION AND ORDER

corpus proceeding pursuant to 28 U.S.C. § 2254. This court dismissed petitioner's petition as moot in an Opinion and Order dated August 25, 2008. Petitioner appealed. The Ninth Circuit Court of Appeals reversed and remanded the case for a determination of the merits of petitioner's claims. For the reasons set forth below, the petition is denied, and this proceeding is dismissed.

## BACKGROUND

Petitioner is in the custody of the Oregon Department of Corrections (the ODC) following convictions for robbery, rape and sodomy in Lane County Circuit Court in 1980. Petitioner pleaded guilty and was sentenced to five years for the robbery, and an indeterminate sentence of 20 years on the rape, to run concurrently. Petitioner also received an indeterminate sentence of 20 years on the sodomy, to run consecutive to the rape sentence. In total, petitioner received indeterminate sentences of 40 years, with a 20 year minimum term.

Petitioner's robbery sentence expired on December 4, 1982, and the rape sentence expired on March 15, 1992. Petitioner's sodomy sentence will expire March 15, 2012.

Petitioner was released on parole in March of 1998. Petitioner's parole was revoked in August of 2004, and he received a sanction of 118 days. Petitioner was re-released in November of 2004. Petitioner's parole was again revoked in January of 2005. At a future disposition hearing held on April 28, 2005, the State

2 - OPINION AND ORDER

Board of Parole and Post-Prison Supervision (the Board) found aggravation and denied petitioner's re-release, finding that petitioner could not be adequately controlled in the community. The Board set a new release date of December 15, 2006, following a 24 month sanction. Based on the most current information provided to this court, petitioner was released on December 15, 2006, and remains on parole.

   Petitioner filed a petition for writ of habeas corpus in Marion County Circuit Court on July 11, 2005, purporting to bring a due process challenge to the Board's determination that petitioner had forfeited his good time credits when his parole was revoked. (Resp. Ex. 103.) The matter appears to have languished at state court. On February 15, 2006, petitioner moved to voluntarily dismiss his habeas action, contending that the court had delayed and was interfering with his ability to pursue a similar writ of habeas corpus in the Oregon Supreme Court. (Resp. Ex. 104.) On October 20, 2006, the Honorable Mary M. James issued an Order to Show Cause why the writ should not issue. This triggered a response from the state, which moved to deny the writ on November 15, 2006. (Resp. Ex. 106.) The petition in Marion County ultimately was denied in 2007. Petitioner did not seek review of the Marion County action.

   Meanwhile, petitioner filed a petition for writ of habeas corpus in the Oregon Supreme Court on February 27, 2006, seeking to

3 - OPINION AND ORDER

invoke that court's original jurisdiction. (Resp. Ex. 108.) In that petition, petitioner again challenged the Board's authority to deem his good time credits forfeited. Petitioner also filed a motion for summary judgment, a motion for appointment of counsel, and a motion to file additional authorities. (Resp. Exs. 112 & 113.) The Oregon Supreme Court denied petitioner's motions and denied the writ of habeas corpus on April 25, 2006. (Resp. Ex. 113.)

Petitioner filed the instant federal habeas corpus proceeding on May 5, 2006, and an amended petition on October 23, 2007. (CR. #1 & #36.)

## **DISCUSSION**

In the instant proceeding, petitioner does not challenge the legality of his convictions. In the amended petition, petitioner alleges two constitutional claims: (1) his due process rights were violated when the Board and the ODC applied rules *ex post facto* when it failed to restore his pre-parole good time credits following his parole revocation; and (2) his due process rights were violated when the Board and the ODC refused to restore his pre-parole good time credits following his parole revocation.

Respondent moves to deny petitioner's claims on the ground that they are procedurally defaulted. Alternatively, respondent contends petitioner's claims fail on their merits. I agree with

4 - OPINION AND ORDER

respondent that petitioner's claims are procedurally defaulted and that alternatively, his claims fail on the merits.

## I. Plaintiff's Claims Are Procedurally Defaulted.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of the law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. Casey, 386 F.3d at 920; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Cook v. Schriro, 538 F.3d 1000, 1025 (2008), cert. denied, 129 S. Ct. 1033 (2009).

Petitioner raises his *ex post facto* claim for the first time in this proceeding, and therefore, it was not fairly presented to the Oregon courts. Because the time for raising this claim has expired, it is procedurally defaulted. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Casey, 386 F.3d at 916-17; O.R.S. § 144.335(4)(judicial review of Board action must be sought within 60 days).

Petitioner asserted his due process claim in two separate habeas corpus proceedings – in Marion County and in the Oregon Supreme Court. Contrary to petitioner's assertions, neither proceeding has exhausted his due process claim.

Under O.R.S. § 144.335, petitioner must seek judicial review of the Board's actions in the Oregon Court of Appeals. Thus, it does not appear that petitioner's writ of habeas corpus filed in Marion County exhausted his due process claim. See Castille v. Peoples, 489 U.S. 346, 351-52 (claim not fairly presented where it is presented in a procedural context where the merits will not be considered). Regardless, to the extent that petitioner did present his due process claim in his Marion County habeas proceeding, he did not seek discretionary review of that decision in the state's highest court, and thus has failed to exhaust that claim. Peterson v. Lambert, 319 F.3d 1153, 1156 (9th Cir. 2003)(in Oregon, petitioner must seek review in state supreme court to properly exhaust claim). Because the time for doing so has expired, his due

6 - OPINION AND ORDER

process claim is procedurally defaulted. O.R.S. § 138.071 (30 day limitation for direct appeals).

Additionally, petitioner's petition for writ of habeas corpus filed in the Oregon Supreme Court did not fairly present his claim. Casey, 386 F.3d at 915-16 ("As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby affording the state courts a meaningful opportunity to consider allegations of legal error."(internal quotation omitted)). Because petitioner was required to seek judicial review in the Oregon Court of Appeals under O.R.S. § 144.335, petitioner's habeas proceeding seeking to invoke the Oregon Supreme Court's original jurisdiction did not properly present his due process claim.[1] Castille, 486 U.S. at 351-52. To be sure, the denial of petitioner's petition for writ of habeas corpus in the Oregon Supreme Court is not considered a decision on the merits. Kellotat v. Cupp, 719 F.2d 1027, 1031

---

[1] I disagree with respondent that petitioner's due process claim is procedurally defaulted based on an "independent and adequate" state rule. Cone v. Bell, 129 S. Ct. 1769, 1780 (2009); Coleman, 501 U.S. at 729-30. It is not clear from the Oregon Supreme Court's denial of petitioner's habeas proceeding that it expressly invoked a procedural bar to petitioner's claims. Coleman, 501 U.S. at 735; Valerio v. Crawford, 306 F.3d 742, 773 (9th Cir. 2002), cert. denied, 538 U.S. 994 (2003)("In order for a state procedural rule to serve as an adequate state ground, it must . . . be *actually relied on* in the particular case in question." (emphasis added)).

(9th Cir. 1983); Sweet v. Cupp, 640 F.2d 233, 238 (9th Cir. 1981)(petitioner who filed petition for writ of habeas corpus instead of pursuing post-conviction proceeding did not exhaust state remedies).  Because the time for presenting petitioner's due process claim in the Oregon Court of Appeals has expired, it is procedurally defaulted.  O.R.S. § 144.335(4).

Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750; Cook, 538 F.3d at 1025.

In this case, petitioner has not demonstrated that "some objective factor external to the defense" impeded his efforts to properly present his claim in state court pursuant to O.R.S. § 144.335.[2]  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Absent such a showing, plaintiff cannot establish cause to excuse his procedural default.  Id.  Petitioner does not contend that a fundamental miscarriage of justice will occur if his claims are not

---

[2] Petitioner's contention that he should be excused from exhausting his state remedies because the process was inadequate to protect his rights pursuant to 28 U.S.C. § 2254(b)(1)(B)(ii) does not excuse his procedural default.  Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007), cert. denied, 129 S. Ct. 37 (2008)("the relevant question becomes whether Smith's procedural default can be excused, not whether Smith's failure to exhaust can be excused.").

considered. Coleman, 501 U.S. at 750. As a result, petitioner's claims are not eligible for federal habeas corpus review.

## II. Petitioner's Claims Fail on the Merits.

Even assuming *arguendo* that petitioner has not procedurally defaulted his *ex post facto* and due process claims, petitioner is not entitled to relief. See Roberts v. Hall, 2010 WL 2364746, *4 (D. Or. Apr. 16, 2010), adopted by, 2010 WL 2572775 (D. Or. June 23, 2010)(addressing merits of procedurally defaulted claim in the alternative); see also 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

   A.   *Ex Post Facto*.

In order to establish a violation of the *Ex Post Facto* Clause, petitioner must demonstrate: (1) that a criminal law has been applied to events occurring before its enactment; and (2) he has been disadvantaged by the law's retrospective application. Weaver v. Graham, 450 U.S. 24, 29-30 (1981); Hunter v. Ayers, 336 F.3d 1007, 1011 (9th Cir. 2003). The *Ex Post Facto* Clause applies in the context of prison credits awarded toward a prisoner's early release. Hunter, 336 F.3d at 1011.

According to petitioner, the Board and the ODC applied rules enacted subsequent to his conviction to forfeit his statutory and

9 - OPINION AND ORDER

extra good time credits when it revoked his parole in 2004 and 2005. Petitioner contends that under the rules in place at the time of his conviction, the ODC was required to make a recommendation as to the restoration of petitioner's pre-parole good time credits. Petitioner also submits that the Board was required to act upon the ODC's recommendation at his future disposition hearing on April 28, 2005. According to petitioner, it was not until the adoption of O.A.R. 291-097-0070 in 2005 that good time credits were deemed forfeited. I disagree.

The Oregon statute which controls the calculation of good time credits by the ODC is O.R.S. § 421.120. The statute has been in existence, in all material respects, since 1953. At the time of petitioner's offense, the statute provided in part:

> (1) Each inmate confined in execution of the judgment of sentence upon any conviction in the Department of Corrections institution, for any term other than life, and whose record of conduct show that the inmate faithfully has observed the rules of the institution, shall be entitled to a deduction from the term of sentence to be computed as follows:
>
>     ....
>
>     (b) From the term of a sentence of more than one year, one day shall be deducted for every two days of such sentence actually served in the Department of Corrections institution.
>
>     ....
>
> (2) When a paroled inmate violates any condition of parole, no deduction from the term of sentence, as provided in subsection (1) of this section, shall be made for service by such inmate in the Department of

10 - OPINION AND ORDER

>     Corrections institution prior to acceptance and release
>     on parole, except when authorized by the State Board of
>     Parole upon recommendation of the superintendent thereof.

Oregon courts have long held that pursuant to O.R.S. § 421.120(2), when an individual violates parole, he *automatically forfeits* his pre-parole good time credits. Brundridge v. Hall, 2007 WL 2816213, *3 (D. Or. Sept. 27, 2007); Griffin v. Board of Parole, 201 Or. App. 21, 28-29, 116 P.3d 930, rev. denied, 339 Or. 610 (2005); Ventris v. Maass, 99 Or. App. 85, 88, 781 P.2d 1224 (1989), rev. denied, 309 Or. 231 (1990); Burns v. Newell, 12 Or. App. 621, 624-25, 507 P.2d 414 (1973). By operation of statute, petitioner's pre-parole good time credits were forfeited when he violated parole. Thus, petitioner's contention that pre-parole good time credits were not forfeited until the adoption of O.A.R. 291-097-0070 in 2005, is incorrect. Brundridge, 2007 WL 2816213 at *3.

Contrary to this well-established law, petitioner maintains that under the rules in place at the time of his conviction, his pre-parole credits were merely *suspended* or were *automatically restored* until a recommendation was made by the ODC, relying on O.A.R. 291-100-020 and 255-175-085 (1979). Petitioner's reliance on the rules is misplaced.

A review of O.A.R. 291-100-020 (1979) does not indicate that pre-parole good time credits are suspended or automatically restored. Rather, the rule follows the statute:

11 - OPINION AND ORDER

> When a paroled inmate violates any condition of his/her parole, a revocation hearing is held and the individual is returned to the institution, no deduction from the term of his/her sentence, as provided in subsection 291-100-015(2)(b), shall be made for service by such inmate in the penal or correctional institution prior to his/her acceptance and release on parole, *except when authorized by the State Board of Parole upon recommendation of the superintendent of the institution.* (ORS 421.120(2))
>
> (1) On the basis of a Parole Violator Progress Report, the staff designated by the superintendent will, as quickly as possible after the inmate's return to the institution, carefully consider his/her case in terms of the factors delineated in rule 291-100-030, and will forward to the superintendent a recommendation concerning Good Time credits accrued by the inmate prior to his/her release on parole.  O.A.R. 291-100-020 (1979) (emphasis added).

Nothing in O.A.R. 291-100-020 (1979) changes the operation of O.R.S. § 421.120(2) to forfeit the good time credits automatically. Thus, even if the Board and the ODC applied the rules as petitioner submits, petitioner was required to obtain the superintendent's recommendation and the Board's authorization to have his pre-parole good time credits restored.  Brundridge, 2007 WL 2816213 at *3.  It is undisputed that petitioner has not received such a recommendation, nor has the Board authorized restoration of his pre-paroled good time credits.

Petitioner argues that under O.A.R. 255-175-085 (1979), the Board was required to consider restoring his pre-parole good time credits.  Petitioner also contends that pursuant to O.A.R. 255-175-085(2)(b), the Board was required to return all or part of his pre-

12 - OPINION AND ORDER

parole good time credits.  Petitioner's argument misses the mark.

The relevant rule provides in part:

(1) After parole is revoked, the Board shall conduct a hearing to establish future disposition of the prisoner within 90 days after his/her return.  This hearing shall follow the procedures of a prison term hearing as provided in Division 130.

(2) At the future disposition hearing, the Board may:

    (a) Set a new parole release date according to the guidelines in rule 255-175-085 (sic) and choose not to give credit for statutory good time earned until suspension of parole; or

    (b) Deny further parole consideration, according to the guidelines in rule 255-175-090, and return all or part of the statutory good time to which the prisoner is entitled. O.A.R. 255-175-085 (1979).

Like O.A.R. 291-100-020, there is nothing in O.A.R. 255-175-085 which interferes with the operation of O.R.S. § 421.120(2) to automatically forfeit pre-parole good time credits upon revocation. In contrast to the mandatory language requiring that a future disposition hearing be held within 90 days, the rule's discretionary language states that the Board *may* set a new release date and *choose* not to restore the pre-parole good time credits, or it *may* deny a new release date and return all or part of pre-parole good time credits.  O.A.R. 255-175-085(2)(1979).  Because the portion of the rule relating to restoration of pre-parole good time is wholly discretionary, it cannot be read to *require* the Board to consider a recommendation from the superintendent, and certainly

13 - OPINION AND ORDER

cannot be read to require the Board to *accept* that recommendation. See Griffin, 201 Or. App. at 29-30; Brundridge, 2007 WL 2816213 at *3 (finding that O.A.R. 255-175-085(b)(1981) does not require the Board to return pre-parole good time credits). Thus, even if the Board applied the rule as petitioner suggests, petitioner is not entitled to have his pre-parole good time credits restored.

Additionally, it is undisputed that the Board did not require petitioner to serve the remainder of his sentence, which would keep him incarcerated until May of 2012. Instead, the record indicates that at the future disposition hearing, the Board set a new release date of December 15, 2006, and denied petitioner's pre-parole good time credits. (Pet. Ex. 1, p. 3.) The Board's actions appear to be entirely consistent with O.A.R. 255-175-085(2)(a)(1979).

Lastly, petitioner's reliance on O.A.R. 291-100-030 (1979) is entirely misplaced. That rule addresses the forfeiture of good time credits for institutional misconduct and has no application to the instant case. See Brundridge, 2007 WL 2816213 at *3.

In sum, I conclude that petitioner has not demonstrated retroactive application of a state law or administrative rule to his case. Under the statute in effect at the time of petitioner's offenses, petitioner's pre-parole good time credits were automatically forfeited. Additionally, none of the administrative rules petitioner contends should have been applied alter the operation of O.R.S. § 421.120(2). Accordingly, the state court's

14 - OPINION AND ORDER

rejection of his *ex post facto* claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Weaver, 450 U.S. at 29; Hunter, 336 F.3d at 1011.

**B.   Petitioner Was Not Denied Due Process of Law.**

To establish a due process violation, the petitioner must demonstrate that: (1) he has been deprived of constitutional liberty or property interest; and (2) he has been denied adequate procedural protections. McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002); Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979); Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974).

Petitioner submits that under O.A.R. 291-100-020(1)(1979) and O.A.R. 255-175-085(1979), the superintendent was required to make a recommendation and the Board was required to consider restoring his pre-parole good time credits at the future disposition hearing. According to petitioner, because he did not receive either a recommendation from the superintendent or a disciplinary committee hearing concerning restoration of his pre-parole good time credits, he has been denied due process. I disagree.

Initially, petitioner has failed to establish that he has a protected state-created liberty interest in the *restoration* of his forfeited pre-parole good time credits. Brundridge, 2007 WL 2816213 at *4; Ventris, 99 Or App. at 89 ("Pre-parole time is not, . . . as plaintiff argues, a 'vested right,' but may be lost by violating a condition of parole."); Todd v. Board of Parole and

15 - OPINION AND ORDER

Post-Prison Supervision, 161 Or. App. 143, 145, 987 P.2d 525 (1999)(declining to overrule Ventris); Burns, 12 Or. App. at 627 (noting that O.R.S. § 421.120(1) does not imply a vested right to good time credit).

Additionally, the Oregon Court of Appeals has dismissed similar arguments in Griffin. In Griffin, the petitioner sought restoration of his good time credits after his parole was revoked pursuant to O.R.S. § 421.120(2). There, the petitioner argued that O.A.R. 291-100-018(3) created a liberty interest in the restoration of his good time credits. That rule provided that the Board may approve or disapprove of restoration of good time credits. Id. at 27. There, the petitioner argued that although O.R.S. § 421.120(2) took away his good time credits as a matter of law, O.A.R. 291-100-018(3) gave them back as a matter of right. Id. at 29.

Rejecting those arguments, the Griffin court determined that the petitioner did not have a liberty interest in the restoration of his good time credits which entitled him to a separate hearing. The court ruled that because O.R.S. § 421.120(2) operated to automatically forfeit the good time credits upon parole revocation, the only fact finding required to occur was in the parole revocation hearing. Griffin, 201 Or.App. at 28-29.

Additionally, with respect to whether the petitioner was entitled to a recommendation from the superintendent, the Griffin court concluded that:

16 - OPINION AND ORDER

> Even assuming that petitioner is correct in his interpretation of OAR 291-100-018(3)(1987) as *requiring* the superintendent of a correctional institution to recommend to the board that good time be restored, that rule could not, as a matter of law, have operated either to restore petitioner's good time credits or to require the board to accept the recommendation and authorize the restoration. Griffin, 201 Or. App. at 29 (emphasis in original).

The court concluded that only the Board had the statutory authority to restore good time credits. Id. at 30.

To the extent that petitioner contends that Griffin should not control because under O.A.R. 291-100-020 and O.A.R. 255-100-085 (1979), the superintendent was required to make a recommendation, and the Board was required to consider that recommendation, those arguments are rejected. As discussed above with respect petitioner's *ex post facto* claim, the discretionary language of the rules simply does not support petitioner's argument.

Petitioner's attempt to distinguish Griffin on the ground that, unlike the petitioner in Griffin, he has not received either a hearing or a recommendation from the superintendent, is unavailing. As the court in Griffin concluded, because O.R.S. § 421.120(2) operates to automatically forfeit pre-parole good time credits when parole conditions are violated, due process does not entitle petitioner to a separate hearing on restoration of his good time credits. The only fact finding required by due process occurred when petitioner's parole was revoked, a factual determination that petitioner does not challenge in this

17 - OPINION AND ORDER

proceeding. And, as the <u>Griffin</u> court determined, even if he was entitled to a recommendation, the superintendent could not restore his pre-parole good time credits, only the Board has such authority. Because the rules upon which petitioner relies cannot be read to require the Board to accept a recommendation, he is unable to establish a due process violation. See <u>Griffin</u>, 201 Or. App. at 30.

Petitioner's reliance on <u>Baird v. Blacketter</u>, 241 Fed. Appx. 410 (9th Cir. 2007)(not selected for publication), is misplaced. In that case, the petitioner challenged the Board's refusal to provide a hearing prior declining to restore his pre-parole good time credits, which were revoked automatically by Oregon statute when he violated parole. In <u>Baird</u>, the court rejected that challenge and determined that neither O.R.S. § 421.120 (2003) or O.A.R. 255-080-0012(3)© created a liberty interest in restoration of the petitioner's pre-parole good time credits. 241 Fed. Appx. at 411.

Petitioner also appears to argue that because he was not immediately re-released in 2005, he is entitled to restoration of his good time credits. Again, petitioner's argument fails. Under the statute and the rules, petitioner was required to obtain a positive recommendation from the Board to have his pre-parole good time credits restored, and it is undisputed that petitioner has not received such a recommendation.

18 - OPINION AND ORDER

In sum, none of the administrative rules upon which petitioner relies create a protected liberty interest in restoration of his forfeited pre-parole good time credits. Accordingly, the state court's rejection of petitioner's due process claim is neither contrary to, nor an unreasonable application of, clearly established Federal law.

Finally, petitioner requests that Respondent's Exhibit 114 be stricken from the record because it contains records which were not part of the underlying state proceedings. Exhibit 114 contains some records which are part of the state court record and are presented in other exhibits to which petitioner has not objected. (See, e.g., Resp. Ex. 101; Resp. Ex. 1, attached to CR #30.) To the extent that Exhibit 114 contains other materials, such information was not necessary for resolution of the issues before the court, and accordingly, petitioner's motion to strike is denied as moot. Petitioner's alternative request to expand the record or for an evidentiary hearing is denied.

////

////

////

////

////

////

////

19 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, petitioner's amended petition for writ of habeas corpus (#36) is DENIED, and this proceeding is DISMISSED, with prejudice. Petitioner's request to strike is DENIED as moot, petitioner's request to expand the record is DENIED, and petitioner's request for an evidentiary hearing is DENIED.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this _1__ day of MARCH, 2011.

/s/ Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge